UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 4:22-10113-CV-GAYLES-TORRES

HAROLD MURPHY AND
PATRICIA MURPHY,

      Plaintiffs,

v.

FIRST PROTECTIVE INSURANCE
COMPANY D/B/A FRONTLINE
INSURANCE,

      Defendant.

_____/

**ORDER**

**THIS CAUSE** comes before the Court on Defendant's Motion to Dismiss First Amended Complaint (the "Motion").[1] [ECF No. 21]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion shall be denied.

**I.    BACKGROUND**[2]

Plaintiffs Harold and Patricia Murphy own a high-end vacation rental home in Islamorada, Florida (the "Property"). [ECF No. 13 ¶¶ 5-7]. Defendant insured the Property under a homeowner's insurance policy effective April 22, 2017, through April 22, 2018 (the "Policy"). *Id.* ¶ 12.

---

[1] Although the Motion is labeled as "Motion to Dismiss First Amended Complaint", Defendant's arguments are directed towards the sufficiency of Plaintiff's allegations regarding punitive damages and not the bad faith claim itself.
[2] As the Court is proceeding on a motion to dismiss, it accepts the facts as alleged in the Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

On September 10, 2017, Hurricane Irma damaged the Property rendering it unrentable. *Id.* ¶¶ 13–14. Plaintiffs timely notified Defendant of the damage to the Property; and on September 18, 2017, Defendant acknowledged Plaintiff's claim. *Id.* ¶¶ 15, 27. On October 12, 2017, Defendant's adjuster inspected the Property. *Id.* ¶ 29. Plaintiffs advised the adjuster that, on October 2, 2017, they hired a roofer to reattach and secure the roof's metal ridge cap to prevent further water damage to the Property.[3] *Id.* ¶ 31(a). Plaintiff also requested that the loss of rental income be adjusted as a part of the claim. *Id.* ¶¶ 31(c-e).

On October 26, 2017, Defendant provided Plaintiff with an estimate of damages totaling $30,894.93 for replacement cost value. *Id.* ¶ 34. Because the estimate was less than the $31,000.00 Policy deductible, Defendant informed Plaintiffs that it would not pay the claim and would not take any additional action. *Id.* On November 30, 2017, Plaintiffs disputed Defendant's initial estimate. *Id.* ¶ 39. Plaintiffs made several subsequent attempts to communicate with Defendant regarding the claim; Defendant failed to respond to Plaintiffs' specific concerns. *Id.* ¶¶ 40-41. Plaintiff also provided Defendant with information regarding their loss of rental income. *Id.* ¶ 42. On March 1, 2018, one of Defendant's preferred engineering vendors inspected the Property and issued a report finding that the roof had no wind or impact damage, there was no permanent damage to any of the door units, and the cracks in the second-floor concrete balcony and the flooring system were not due to Hurricane Irma. *Id.* ¶¶ 47(c-e). Plaintiffs' engineer also inspected the Property and issued a report finding, conversely, that Hurricane Irma caused the claimed damage to the Property. *Id.* ¶ 48.

Unsatisfied with how Defendant handled the claim, Plaintiffs filed a lawsuit against Defendant for breach of contract on June 5, 2019 ("Breach of Contract Action"). *Id.* ¶¶ 49-50. The

---

[3] Plaintiffs provided Defendant's adjuster with a copy of the invoice for the repairs totaling $8,900. [ECF No. 13 ¶ 31(a)].

court in the Breach of Contract Action granted Defendant's motion to compel appraisal. *Id.* ¶ 51. On April 27, 2021, Defendant's appraiser concluded that the actual cash value of the repairs needed at the Property totaled $392,562.02 (replacement cost value) and $387,062.02 (actual cash value). *Id.* ¶ 55. Defendant then issued payment to Plaintiffs for $292,883.60, representing the actual cash value of the appraisal less prior payments and the deductible. *Id.* ¶ 56.

Subsequently, Plaintiffs timely filed three consecutive Civil Remedy Notices of Insurer Violations ("CRN") with the Florida Department of Financial Services relating to Defendant's handling of the claim. *Id.* ¶ 58. In each CRN, Plaintiffs alleged that Defendant violated provisions of Florida Statutes §§ 624.155 and 626.9541. *Id.* ¶¶ 59-68. Upon notice of the first CRN, Defendant responded on the 58th day of the 60-day cure period denying all allegations and taking the position that it properly investigated Plaintiffs' claim. *Id.* ¶¶ 61-62. Defendant similarly denied all allegations contained in the second and third CRNs. *Id.* ¶¶ 66-70.

On December 16, 2022, Plaintiffs filed this insurer bad faith action against Defendant. [ECF No. 1]. On February 20, 2023, Plaintiffs filed their First Amended Complaint against Defendant alleging one claim for bad faith arising under Florida Statutes §§ 624.155 and 626.9541. [ECF No. 13]. Specifically, Plaintiffs allege that Defendant evaluated their claim in bad faith by delaying payment to insureds, performing the bare minimum adjustment and valuation for claims, using preferred vendors to support its low-ball evaluations, attempting to use the appraisal process after a lawsuit is filed as a substitute for fairly and fully evaluating claims and to increase litigation costs for insureds, and not attempting in good faith to settle claims. Plaintiffs also seek punitive damages and alleged that Defendant engaged in the bad faith conduct with such frequency to indicate a general business practice. *Id.* 95-98. In support, Plaintiffs identify eight other claims against Defendant, by other insureds, that show a similar pattern of bad faith, including low-ball

estimates, delays, lack of responsiveness, and use of preferred vendors. *Id*. ¶ 101. Defendant now moves to dismiss Plaintiffs' claim for punitive damages.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

## III.    DISCUSSION

Plaintiffs bring their bad faith claim pursuant to Florida Statute § 624.155. "A bad faith claim brought pursuant to Fla. Stat. § 624.155, 'is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay.'" *Goeskeke v. Arch Specialty Ins. Co.*, No. 20-cv-24878, 2021

WL 2462332, at 2 (S.D. Fla. Feb. 10, 2021) (quoting *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000)). A complaint states a claim for bad faith under § 624.155 if a plaintiff alleges (1) the filing of a CRN in compliance with Florida Statute § 624.155(3)(a); (2) resolution of the underlying contract claims in plaintiff's favor; and (3) that plaintiff suffered damages resulting from the insurer's actions. *Id*.

While Plaintiffs assert a statutory bad faith claim for extra contractual damages, Defendant argues that Plaintiffs fail to properly allege entitlement to punitive damages. The Court disagrees.

Florida Statute § 624.155(8) provides:

> (8) Punitive damages may not be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:
>
> (a) Willful, wanton, and malicious;
>
> (b) In reckless disregard for the rights of any insured; or
>
> (c) In reckless disregard for the rights of a beneficiary under a life insurance contract."

Fla. Stat. § 624.155(8).[4]

Here, Plaintiffs allege that Defendant's general business practice includes making low-ball valuations, which are typically below or near the policy deductible, then using preferred vendors and engineering companies to support its low-ball loss valuations and refusing to change the valuations even when presented with additional supporting documentation showing Defendant's valuation is incorrect. [ECF No. 13 ¶ 96]. Plaintiffs also allege that a part of Defendant's general business practice is to stand by their valuations until its insureds resort to litigation when Defendant

---

[4] Defendant mistakenly argues that Plaintiff must allege that Defendant's acts were willful, wanton and malicious **and** in reckless disregard for the insured. Defendant misreads the statute. Plaintiff must only allege, and ultimately establish, that Defendant's acts were willful, wanton, and malicious **or** in reckless disregard for the rights of the insured. Fla. Stat. § 624.155.

invokes appraisal and forces its insureds to incur further expenses. *Id.* ¶ 97. Plaintiffs allege that Defendant engaged in a similar pattern with eight other claims involving other insureds. Accordingly, the Court finds that Plaintiff sufficiently alleges that Defendant has a general business practice that recklessly disregards the rights of its insureds. *See Sandpiper Isle Condo. Assoc., Inc. v. Empire Indemnity Ins. Co.*, No. 2:21-cv-105, 2022 WL 4355736, at *3 (M.D. Fla. Sep. 20, 2022) (holding that the plaintiff had sufficiently alleged entitlement to punitive damages where it alleged a similar pattern and practice over five claims involving other insureds).[5] Accordingly, the Court finds that Plaintiffs have sufficiently alleged entitlement to punitive damages for their bad faith claim.

## IV.   CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss First Amended Complaint [ECF No. 21] is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of August, 2023.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[5] Defendant argues that Plaintiffs failed to satisfy the requirements of Florida Statute § 768.72(1) which provides that "no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." Fla. Stat. § 768.72(1). Defendant's reliance on § 768.72(1), at this stage of the litigation, is misplaced. The Eleventh Circuit has held that Florida Statute § 768.72 "conflicts with and must yield to the 'short and plain statement' rule contained in Federal Rule of Civil Procedure 8(a)(3) . . . ." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000) (citing *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1295-99 (11th Cir. 1999)); *see also Negron v. CitiMortage*, No. 16-CIV-61776, 2016 WL 10953267, at *4 (S.D. Fla. Oct. 19, 2016) ("Accordingly, the Eleventh Circuit held that Fla. Stat. § 768.72 is inapplicable in federal diversity cases.").